Haven *v.* Brown.

## HAVEN & al. vs. BROWN & al.

Where the meaning of the parties to a written contract cannot be collected from the instrument itself, by reason of its ambiguity or illegibility; it seems that parol evidence of the acts of the parties, contemporaneously with and immediately after the execution of the instrument, is proper for the consideration of the jury.

The subsequent declarations of a general agent, touching a contract he has entered into in the name of his principal, being made to a stranger, cannot be received to affect the rights of the principal, already acquired.

The death of one of several joint plaintiffs, in an action of trespass *quare clausum fregit*, does not abate the suit.

THIS was an action of trespass *quare clausum fregit*, for cutting timber trees on the land of the plaintiffs ; which the defendants justified under an alleged license.

In support of the justification, the defendants produced a bond signed by the plaintiffs by *William C. Whitney*, Esq. their agent conditioned, upon the payment of the purchase-money, to give them a deed of a tract of land, being the lot numbered five in the second range of lots in *Hebron*, according to the new survey, containing one hundred acres more or less ; bounded beginning at a certain hemlock tree, and from thence " a southwestern course, on the old line, to the *Hogan* pond," and thence by the pond, and other bounds, to the beginning. The trespass was done on the northward side of a line drawn southwest from the hemlock tree ; which the plaintiffs contended was the course mentioned in the bond. But the writing being somewhat obscured and worn, the defendants read it " a northwestern course " ; and undertook to show an old line lead-

ing off northwestwardly from the hemlock tree, and inclining circuitously to the west, in a direction to strike the pond ; insisting that this was the line intended by the parties, within which the trespass was done.

To support their construction, the defendants offered evidence to prove that when the bargain was made and the bond executed, *Whitney* and *Brown* examined the old line last mentioned, which the former showed as the line to which he sold. To the admission of this testimony the plaintiffs objected ; but *Parris J.* before whom the cause was tried, overruled the objection.

The defendants also offered the testimony of *Samuel H. King*, one of the assessors of *Hebron* at some period after the execution of the bond ; to prove that Mr. *Whitney*, still continuing the agent of the plaintiffs, and while giving in the valuation of their property, had pointed out on the plan of the town the line in controversy, and made sundry declarations relative thereto ; neither of the parties being present at the time. To the admission of this testimony also, the plaintiffs objected ; but the judge admitted it ; and the witness was further permitted to testify that it was the custom and practice of Mr. *Whitney*, in the course of his agency, to permit those who held bonds for deeds to occupy the premises under their bonds.

A verdict was returned for the defendants, which was taken subject to the opinion of the court upon the admissibility of the testimony above stated.

After the trial *Thomas Foster*, one of the plaintiffs, died ; whereupon the defendants moved that the writ, for this cause, should be abated.

*Fessenden* and *Deblois*, being called on by the court to sustain the admission of *Whitney's* declarations as testified by *King*, argued that they were admissible as part of the *res gesta*, *Whitney* stil continuing the general agent of the plaintiffs. And they cited, 1 *Stark. Ev.* 42 ; *Thallimer v. Brinckerhoff*, 4 *Wend.* 394 ; *Farley v. Hastings*, 10 *Ves.* 193 ; 5 *Esp. Rep.* 134, 145 ; 2 *Esp. Rep.* 211 ; *Cobb v. Lunt*, 4 *Greenl.* 503 ; *Lunt v. Holland*, 14 *Mass.* 149 ; *Hall v. Leonard*, 1 *Pick.* 97 ; 1 *Stark. Ev.* 411,

Haven *v.* Brown.

444 ; *Harwood v. Goodright, Cowp.* 87 ; *Peisch v. Dixon,* 1 *Mason* 10 ; 1 *Wils.* 215 ; *Fonbl. Eq.* 25 ; *Newland on Contr.* 100, 101 ; 3 *Dane's Abr.* 363 ; *Cook v. Booth, Cowp.* 819 ; *Blakeley v. Winstanly,* 3 *D. & E.* 279 ; *Rex v. Laindon,* 8 *D. & E.* 356 ; *Davenport v. Mason,* 15 *Mass.* 85 ; *Fowle v. Bigelow,* 10 *Mass.* 379 ; *Leland v. Stone, ib.* 459.

*N. Emery, Greenleaf* and *L. Whitman,* for the plaintiffs.

The opinion of the Court was read at the ensuing *October* term as drawn up by

PARRIS J. If a written contract be perfect in itself, and be capable of a clear and intelligible exposition from the terms of which it is composed, it cannot be contradicted or varied by oral testimony upon the principle that the language used by the parties in their contract is the best evidence of their intent.

In this case the language of the written instrument is the principal subject of controversy ; the one party contending that the literal reading is " south western course to the old line," the other, that it is " north western course on the old line." It is the language itself, and not its construction, which was to be ascertained. The existence of an old line in a north westerly direction from the hemlock tree would coincide with the reading contended for by the defendants ; and inasmuch as it would not contradict the clear and intelligible language of the written instrument, we are inclined to think it a fact proper to be proved, and that the evidence offered for that purpose was rightly admitted. So, also, the fact that when the bargain was made and the bond executed, *Whitney* shew the north westerly line as the one to which he sold, was also corroborative of the position taken by the defendants, that such was the true reading of the instrument.

In *Fowle v. Bigelow,* 10 *Mass.* 379, the jury were instructed that the meaning of the parties being uncertain from the words used, and it being out of the power of the court to ascertain their meaning by reference to the body of the instrument, evidence of the acts and doings of the parties contemporaneously with and immediately

subsequent to the execution of the instrument was proper for their consideration. This instruction, so far as it related to the admissibility of the evidence, was sanctioned by the court. In all the cases cited by the plaintiffs' counsel, the language in the deed was clear, explicit and free from ambiguity, and parole evidence was, of course, held inadmissible to control or vary it. Such is not the case before us.

But it is not necessary to decide the above points definitively. The testimony of *King*, proving the declarations of *Whitney*, at another time, relative to the line in controversy, the value of the plaintiffs' land, and sundry other statements relating thereto, is of a different character.

The declarations of an agent, so far as they constitute a part of the *res gestæ*, or in other words, such as are made by him at the time he is engaged in making a contract on the part of his principal, and having reference to the subject matter of such contract, may be given in evidence to affect his principal. They are admitted as the representations of the principal himself, whom the agent represents while engaged in the particular transaction to which the declaration refers. Representations made by an agent, at the time he is contracting for his principal, constitute a part of the contract, as much so as if they had been made by the principal ; and a fact stated by an agent in relation to a transaction in which he is then engaged, and while it is in progress, forms a part of that transaction. But what he says at another and a subsquent period cannot be evidence against the principal. The agent's declarations are received not as admissions but as a part of the *res gestæ. Fairlie v. Hastings*, 10 *Vesey*, 123 ; *Westcott v. Bradford*, 3 *Wash. C. C. Rep.* 500 ; *Thallimer v. Brinckerhoff*, 4 *Wend*. 394. *Whitney's* declarations therefore to *King* could form no part of the contract between the parties in this suit ; nor could he, by virtue of his general agency, explain that contract by any subsequent declaration to a stranger, not a party, so as to prejudice the previously acquired rights of his principal. As the declarations testified by *King* were not made to the party concerned, nor in relation to the bond, nor in the course of the transaction out of which it grew, they cannot

Haven v. Brown.

be considered as the declarations of the plaintiffs by their agent, touching the particular transaction with the defendants, which was the subject for the consideration of the jury, and we think they ought not to have been addmitted. As this evidence may have influenced the jury in forming their verdict, it must be set aside and a new trial granted.

Since the verdict in this case, one of the plaintiffs has deceased, and the defendants contend that the action is consequently abated. It is clear that in actions of *tort*, such as trespass *quare clausum*, or for taking of goods, trover, and case for misfeasance &c. tenants in common must all join, or the suit will abate, if the omission be properly and seasonably pleaded; and at common law, in all actions, where there were two or more plaintiffs, the death of one of them, pending the suit, was an abatement of the action.

But by *Stat.* 8 & 9, *Will.* 3, *chap.* 11, *sect.* 7, if there be two or more plaintiffs and one or more of them die, if the cause of such action survive to the surviving plaintiff or plaintiffs, the writ or action does not thereby abate, but such death being suggested upon the record, the action is to proceed at the suit of the surviving plaintiff or plaintiffs. In this case does the cause of action survive to the surviving plaintiffs? *Chitty* says, " in personal actions, as for trespass to land, tenants in common may join, because in these actions, though their estates are several, yet the damages survive to all," 1 *Chitt. Pl.* 53. And again, " when one or more of several parties interested in the property, at the time the injury was committed, is dead, the action should be in the name of the survivor;" *ibid.* 55; as in cases *ex contractu*, where one or more of several obligees, having a joint legal interest in the contract, dies, the action must be brought in the name of the survivor.

Where damages are to be recovered for a wrong done to tenants in common, in a personal action, and one of them die, the survivor of them shall have the action; for although the property or estate be several between them, yet the personal action is joint, *Co. Litt.* 198, *a.* As if two tenants in common be of land, and one doth a trespass therein, of this action they are joint tenants, and the survivor shall hold place. So it is if two tenants in common sow their

land, and one doth eat the same with his cattle, though they have the corn in common, yet the action given to them for trespass in the same is joint, and shall survive, for the trespass and damage done to them was joint.—*ibid.*

In this case, we think that the cause of action, if any there was, at the death of *Thomas Foster,* survived to the surviving plaintiffs, and that the action is not abated.